IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JEFFREY CATCHINGS,                         )
                                           )
                    Plaintiff,             )
                                           )     No.  04 C 6110
           v.                              )
                                           )     Judge Robert W. Gettleman
CITY OF CHICAGO, a municipal corporation;  )
PHILLIP J. CLINE, Superintendent of Chicago )
Police Department; TERRY G. HILLARD;       )
UNKNOWN OFFICERS AND AGENTS OF THE )
POLICE DEPARTMENT OF THE CITY OF           )
CHICAGO; THE COUNTY OF COOK[1];            )
MICHAEL SHEAHAN, Cook County Sheriff;      )
OFFICER TIMOTHY J. BROADWAY,               )
OFFICER DANIEL FOLKERS, and                )
UNKNOWN COOK COUNTY                        )
SHERIFF'S OFFICERS AND AGENTS,             )
                                           )
                    Defendants.            )

## MEMORANDUM OPINION AND ORDER

Plaintiff Jeffrey Catchings filed a fifteen-count third amended complaint against

defendants Terry G. Hillard ("Hillard"), Phillip J. Cline ("Cline"), the City of Chicago ("City"),

the County of Cook ("County"), Michael Sheahan ("Sheahan"), and Officers Timothy J.

Broadway ("Broadway") and Daniel Folkers ("Folkers").  Plaintiff alleges that he was repeatedly

arrested without probable cause and wrongfully detained by defendants, in violation of his rights

---

[1]The court notes that no attorney has filed an appearance for the County, which was
added as a defendant in the third amended complaint, and no motion to dismiss was filed on
behalf of the County.  The Cook County State's Attorney has filed an appearance on behalf of
Folkers and Broadway, but no motion to dismiss was filed on their behalf.  The reply in support
of Sheahan's motion to dismiss states that it was filed on behalf of Sheahan, Folkers, Broadway,
and the County.

under the Fourth and Fourteenth Amendments to the U.S. Constitution pursuant to 42 U.S.C. § 1983, the Illinois Constitution, and state common law.

Plaintiff previously filed a first amended complaint asserting the same claims against the same defendants, with the exception of Folkers, Broadway, and the County, who were added to the third amended complaint. In a Memorandum Opinion and Order dated April 26, 2005, this court granted defendants' motions to dismiss plaintiff's federal claims in the first amended complaint without prejudice, declined to exercise supplemental jurisdiction over the state law claims, and gave plaintiff leave to re-file. Catchings v. City of Chicago, 2005 WL 1027127 (N.D.Ill. Apr. 26, 2005). Plaintiff filed a third amended complaint on September 28, 2005.

Defendants Hillard and Cline have filed a motion to dismiss the third amended complaint pursuant to Fed. R. Civ. P. 12(b)(6), arguing that they cannot be held liable under § 1983 in their individual capacities and they are immune from liability under the Illinois Tort Immunity Act, 745 ILCS 10/2-201. Defendant Sheahan has filed a motion to dismiss pursuant to Rule 12(b)(6), arguing, among other things, that plaintiff has failed to state a claim for a constitutional violation, Sheahan cannot be held liable in his individual capacity, and he is immune under state statute.[2] Defendants Sheahan, Folkers, Broadway, and the County filed a joint reply, which appears to adopt the arguments of Sheahan's motion to dismiss, although it contains no argument on behalf of the County. For the reasons discussed below, Folkers and Broadway's motion to

---

[2]The court notes that Sheahan's motion to dismiss is three pages beyond the 15 page limit under Local Rule 7.1 and does not contain a table of contents or a table of cases, as required by L.R. 7.1. Sheahan further burdens the court by failing to underline or italicize case names, making it difficult to locate citations. In addition, the motion and the notice of motion state that the motion to dismiss is on behalf of Sheahan only, and does not include Folkers, Broadway, or the County.

dismiss is denied, and Sheahan, Hillard, and Cline's motions to dismiss are granted in part and denied in part.

## FACTS[3]

The facts of this case are fully detailed in this court's April 26, 2005, Memorandum Opinion and Order granting defendants' motions to dismiss the first amended complaint. Defendant Cline is the superintendent of the Chicago Police Department ("CPD"), and defendant Hillard is the former superintendent. Defendant Sheahan is the sheriff of Cook County, Illinois, and Folkers and Broadway are Cook County Sheriff's deputies. According to the complaint, Broadway was a booking officer and Folkers was a fingerprint officer at Cook County jail on one occasion when plaintiff was taken into custody. Plaintiff is a resident of Chicago, Illinois.

Plaintiff alleges that he was arrested six times between September 2003 and March 2004 by the CPD and the Waukegan Police, pursuant to a warrant erroneously issued in plaintiff's name. The warrant was the result of the prior arrest of plaintiff's brother, Baron Catchings ("Baron")[4], by the CPD. Baron identified himself as plaintiff. He was booked, fingerprinted, and photographed under plaintiff's name. Baron failed to comply with the terms of his probation, an order for violation of probation was entered against plaintiff, and the warrant that resulted in plaintiff's six arrests was issued. After each arrest, plaintiff attempted to explain to processing officers at police stations and to Cook County Sheriff's deputies at the Cook County

---

[3] For the purposes of a motion to dismiss, the court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the plaintiff. Travel All Over the World Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1428 (7th Cir. 1996).

[4] The court notes that plaintiff continues to alternately spell his brother's name "Baron" or "Barron," despite this court bringing it to plaintiff's attention in the last opinion.

Jail that the warrant had been issued in error.  On each occasion, the mistaken identity was ultimately recognized, and plaintiff was released without charges.  In some cases, however, the error was not discovered for more than a week after the arrest, while plaintiff remained incarcerated.  Plaintiff was twice arrested after a state court judge had amended the warrant on its face to state that plaintiff should not be arrested pursuant to the warrant.  Plaintiff spent approximately 43 days in custody of the Cook County Department of Corrections ("CCDOC") at the Cook County Jail as a result of mistaken identity.

## STANDARD

A complaint should not be dismissed unless there is no doubt that the plaintiff cannot prove a set of facts that would entitle him to relief on his claim.  Pressalite Corp. v. Matsushita Elec. Corp. of America, 2003 WL 1811530, at *2 (N.D. Ill. Apr. 4, 2003).  The purpose of a motion to dismiss is to test the sufficiency of the complaint not to decide its merits.  Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990).  However, a complaint consisting of conclusory allegations and unsupported by factual assertions will fail the liberal standard of Fed. R. Civ. P. 12(b)(6).  Palda v. General Dynamics Corp., 47 F.3d 872, 875 (7th Cir. 1995).

## DISCUSSION

**I.  Section 1983 claims**

In his third amended complaint, plaintiff asserts § 1983 claims against all defendants, alleging that each of his arrests, detentions, and incarcerations violated the Fourth and Fourteenth Amendments to the U.S. Constitution.  Count I asserts a § 1983 claim against "Cook County Sheriff Defendants," who plaintiff defines as "Michael Sheahan, both individually and in

his official capacity[,] and unknown Cook County Sheriff's Officers and agents."[5]  Counts IV

and VII assert § 1983 claims against all defendants.  Counts X and XIII assert § 1983 claims

against the City, Hillard, Cline, and unknown officers and agents of the CPD.  Plaintiff's § 1983

claims against Hillard, Cline, and Sheahan are against them individually and in their official

capacity.  Although plaintiff's complaint is unclear, it appears that his claims against Folkers and

Broadway are in their individual capacities only.

To state a claim under § 1983, a plaintiff must allege that he or she was (1) deprived of a

federal right, privilege, or immunity (2) by a person acting under color of state law.  <u>Gomez v.

Toledo</u>, 446 635, 638 (1980).  A § 1983 claim against an individual in his official capacity is

really a claim against the municipality.  <u>Gossmeyer v. McDonald</u>, 128 F.3d 481, 494 (7th Cir.

1997)**.**  To state a § 1983 claim against a municipality, a plaintiff must further show that the

deprivation of his constitutional right was caused by some official custom or policy of the

municipality.  <u>Monell v. Dep't of Soc. Serv. of City of New York</u>, 436 U.S. 658, 690-91 (1978).

The Seventh Circuit has held that to allege municipal liability under § 1983, a plaintiff must

allege that: (1) the defendant had an express policy that, when enforced, causes a constitutional

deprivation; (2) the defendant had a widespread practice that, although not authorized by written

---

[5]The court notes that plaintiff's third amended complaint is generally sloppy and fails to
clearly identify the defendants named in each count.  For example, the substance of Count I
makes claims against Folkers and Broadway, although they are not included in the definition of
"Cook County Sheriff Defendants," who are the only defendants named in the title of Count I.
Several of the other counts pertaining to later arrests are also against "Cook County Sheriff
Defendants" or "all defendants," although Folkers and Broadway are not mentioned in
connection with any other arrests.  In addition, Count XI states that it is against the CPD, which
is not a defendant.  Plaintiff is directed to take more care in future submissions to the court to
avoid further complicating an already convoluted lawsuit.

law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) plaintiff's constitutional injury was caused by a person with final policymaking authority. <u>McCormick v. City of Chicago</u>, 230 F.3d 319, 323-24 (7th Cir. 2000) (citing <u>McTigue v. City of Chicago</u>, 60 F.3d 381, 382 (7th Cir. 1995).

**A. Plaintiff's individual capacity § 1983 claims against Hillard, Cline, and Sheahan**

Plaintiff alleges § 1983 claims against Hillard, Cline, and Sheahan in Counts I, IV, VII, X, and XII. In its April 26, 2005, Memorandum Opinion and Order, this court dismissed plaintiff's individual capacity claims because plaintiff did not allege that Hillard, Cline, or Sheahan actually knew that plaintiff had been arrested and held on the warrant, that the warrant was based on mistaken identity, or that they directed or consented to the conduct that caused the constitutional deprivation. <u>Catchings</u>, 2005 WL 1027127, at *3. All three defendants argue in the current motions that plaintiff has failed to cure the deficiencies because he does not allege that any of the three directly participated in his arrests or incarcerations. Contrary to defendants' arguments, however, plaintiff has successfully amended his allegations.

Defendants ask too much of plaintiff under the liberal notice pleading standards, which do not require a plaintiff to plead sufficient facts to establish the legal elements of his claim. <u>See, e.g.</u>, <u>Higgs v. Carver</u>, 286 F.3d 437, 439 (7th Cir. 2002) (plaintiff must allege "the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer."). Defendants repeatedly confuse their motions to dismiss with motions for summary judgment by incorrectly referring to what plaintiff defendant must "prove," "establish," or "demonstrate,"and citing summary judgment case law. In is axiomatic that a plaintiff need not "establish" anything to survive a motion to dismiss. <u>Id.</u>

In the third amended complaint, plaintiff asserts that Hillard, Cline, and Sheahan "had actual or constructive knowledge of the policy of constitutional violations alleged, and either acquiesced in same, knew about such conduct, facilitated, approve it, condoned it, or turned a blind eye to it." These allegations directly contradict Sheahan's assertion in his reply brief that plaintiff "has not made any new allegations that [Sheahan] had any actual knowledge of the plaintiff's warrant or had directed or consented to cause a constitutional violation," and Hillard and Cline's argument that the third amended complaint is "devoid of allegations regarding the role and responsibilities of Hillard or Cline in the arrest or processing" of plaintiff.

Sheahan, Hillard, and Cline argue that they cannot be individually liable because they were supervisors and plaintiff admits that they were not direct participants in his arrests or continued incarceration. Again, defendants ask too much at this stage. As this court noted in its earlier opinion, direct participation is not necessary if a plaintiff alleges that an individual defendant "acquiesced in some demonstrable way in the alleged constitutional violation," Palmer v. Marion County, 327 F.3d 588, 594 (7th Cir. 2003), or that the supervisor knew about the conduct and "facilitated it, approved it, condoned it, or turned a blind eye for fear of what they might see." Jones v. City of Chicago, 856 F.2d 985, 992 (7th Cir. 1988). Although slight on factual details, plaintiff's complaint alleges knowledge and facilitation or consent by Hillard, Cline, and Sheahan, which is sufficient to state a claim for supervisory liability. See, e.g., Griffin v. Sheahan, 1999 WL 342400, *4 (N.D. Ill. May 14, 1999) (denying motion to dismiss § 1983 claim where plaintiff alleged that defendants were aware of the wrong individuals held on warrants and created a policy of or custom of a perfunctory identity check); McMurry v. Sheahan, 1996 WL 296585, *3 (N.D.Ill. May 31, 1996) (denying motion to dismiss § 1983 claim

where plaintiff alleged that defendants knew of deficiencies in the warrant system).  Hillard and Cline argue for the first time in their reply brief and without citing any authority that constructive knowledge is not sufficient to sustain individual liability.  The court need not resolve this question, however, because plaintiff also alleges actual knowledge.

In the instant case, the court cannot find that there is no set of facts under which Hillard, Cline, and Sheahan may be individually liable for the constitutional deprivations alleged by plaintiff.  Accordingly, defendants' motions to dismiss the individual capacity claims against Hillard, Cline, and Sheahan are denied.

**B.  Official capacity § 1983 claims against Hillard and Cline**

Hillard and Cline argue that the claims against them in their official capacity should be dismissed as redundant because the City is already a party to the lawsuit.  A suit against a government officer in his official capacity is actually a suit against the government entity for which the officer works.  Kentucky v. Graham, 473 U.S. 159, 165-66 (1985); see also Jungels v. Pierce, 825 F.2d 1127, 1129 (7th Cir.1987) (the complaint names the mayor as a defendant in his official capacity which is the equivalent of suing the city); Borromeo v. City of Chicago, 2004 WL 2966925, *3 (N.D.Ill. Nov.16, 2004) (where the plaintiff also names the local government unit as a defendant in the suit, the claim against the individual in his official capacity is redundant).  Plaintiff does not address this argument in his response to the motion to dismiss.  Accordingly, the court grants Hillard and Cline's motion to dismiss the official capacity claims.

**C.  Monell**

The City does not challenge that plaintiff has stated a Monell claim.  Sheahan argues that plaintiff's Monell claims should be dismissed because he fails to state a claim that his due

8

process rights were violated, plaintiff was lawfully detained at the Cook County jail, plaintiff has an adequate state remedy, and the Eleventh Amendment bars plaintiff's claims.

Sheahan argues that plaintiff fails to state a due process claim because his allegations do not "shock the conscience," but plaintiff need not meet this standard. The Supreme Court held in County of Sacramento v. Lewis that conduct by a government official creates a cognizable substantive due process claim when it "shocks the conscience," but explained that lesser conduct in certain circumstances may also violate substantive due process. 523 U.S. 833, 849 (1998). The Lewis Court endorsed the use of the "deliberate indifference" standard for cases in which defendants have the luxury of forethought, including the custodial situation of a prison, where "forethought about an inmate's welfare is not only feasible but obligatory..." Id. at 851. Noting prison officials' opportunities to make unhurried judgments with the chance for repeated reflection, the Court concluded, "When such extended opportunities to do better are teamed with protracted failure even to care, indifference is truly shocking." Id. at 853.

Citing Lewis, the Seventh Circuit has held that jails have a particular responsibility to ensure that they have the authority required to confine an individual, and that "[a] policy that ignores whether the jail has the authority for long-term confinement seems to be a policy of deliberate indifference." Armstrong v. Squadrito, 152 F.3d 564, 578-579 (7th Cir. 1998). The Armstrong court noted that, "jailers hold not only the keys to the jail cell, but also the knowledge of who sits in the jail and for how long they have sat there. They are the ones directly depriving detainees of liberty." Id.

In the instant case, Sheahan does not develop his argument that plaintiff failed to state a due process claim beyond reciting the relevant standard. Sheahan also asserts that he was not a

direct participant in any wrongdoing and plaintiff "was properly held at the CCDOC and promptly released pursuant to court order," but fails to explain how this supports Sheahan's argument that his conduct was not "particularly egregious." See Armstrong, 152 F.3d at 579 (sheriff cannot abdicate responsibility for detainees). Sheahan's conclusory statements cannot overcome plaintiff's allegations that the Sheriff's policies and practices resulted in, or at least greatly extended, his multiple improper incarcerations at the Cook County Jail for periods of eleven, twelve, and eight days. On two of these occasions, a state court judge had previously amended the warrant to specifically state that plaintiff was not to be held because the warrant was intended for his brother, Baron. Each time, plaintiff complained to Sheriff's deputies, who ignored his pleas, that he was being detained due to mistaken identity. Plaintiff's allegations of such deliberate, extended indifference to his protests sufficiently states a due process claim.

Sheahan next argues that plaintiff's Monell claim fails because he does not allege that his injuries were the result of an express policy or widespread custom, and does not allege that his injuries were the result of a custom so permanent and well-settled that they had the force of law. See Monell, 436 U.S. at 690-91. Sheahan insists that plaintiff's "boilerplate" and "generic" allegations are insufficient, and that plaintiff "never attributes any particular policy" to Sheahan in his third amended complaint. Again, Sheahan asks too much of plaintiff at this stage and relies on out-dated case law. For example, Sheahan cites Hossman v. Blunk, 784 F.2d 793 (7th Cir. 1986), for the holding that boilerplate allegations of municipal custom or policy are insufficient to state a § 1983 claim. Hossman, and most of the other cases cited by Sheahan, were implicitly overruled by the Supreme Court's holding in Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163 (1993), which held that no

heightened pleading standard applies to allegations of municipal liability. Sheahan similarly ignores the Seventh Circuit's opinion in <u>McCormick</u>, 230 F.3d at 323-25, which reaffirmed that "conclusory language is sufficient" to put defendant on notice of the § 1983 claim and that no heightened pleading standard applies.

In the instant case, plaintiff has cured the deficiencies in his <u>Monell</u> claim that were identified by this court in its previous opinion. 2005 WL 1027127, at *4. Plaintiff has added allegations to his third amended complaint that the Sheriff has no procedure or policy for investigating claims of misidentification or for matching the fingerprints of a detainee or inmate claiming misidentification. The failure to select or implement necessary practices can constitute a "policy or custom" for purposes of a <u>Monell</u> claim, if that failure causes a constitutional violation. <u>See</u> <u>Harris v. City of Marion, Ind.</u>, 79 F.3d 56, 58 (7th Cir. 1996) (collecting cases). Plaintiff also alleges that the Sheriff has a widespread practice of ignoring claims of mistaken identity, and failed to train its personnel to ensure claims of mistaken identity will not lead to an unconstitutional deprivation. Accordingly, plaintiff has sufficiently stated that his alleged deprivations were the result of a widespread custom or policy, as required for a <u>Monell</u> claim.

Sheahan argues that even if plaintiff has stated a <u>Monell</u> claim, he cannot be held liable because plaintiff was lawfully detained at the CCDOC, and that Sheahan does not have an affirmative duty to investigate the validity of every arrest for the individuals incarcerated at the Cook County jail. Sheahan relies on <u>Baker v. McCollan</u>, 443 U.S. 137, 144-146 (1979), in which the Supreme Court held that law enforcement personnel do not have a duty to investigate every claim of mistaken identity. Plaintiff argues that <u>Baker</u> is inapposite because, unlike the plaintiff in <u>Baker</u>, plaintiff here challenges the validity of the warrant, which he argues "was

11

deficient in identifying the actual person sought." Plaintiff does not explain, however, how the warrant issued in his name was less facially valid than the warrant in Baker, which was also issued in the plaintiff's name after his brother was arrested and provided the plaintiff's information and driver's license. Id. at 141. In the instant case, the name on the warrant was a mistake and plaintiff alleges that defendants failed to "check the actual warrant."[6] Plaintiff, however, fails to specifically allege in his complaint that the warrant was deficient and he does not identify facial deficiencies in the warrant, such as an incorrect home address or birth date, in his briefs.

Plaintiff cites Powe v. City of Chicago, 664 F.2d 639, 647 (7th Cir. 1981), for the holding that where "the authorities had reason to suspect that the name placed on the warrant was not the real name of the intended arrestee, then some other description of the intended arrestee, sufficient to identify him, must be included in the instant case." In Powe, however, the law enforcement authorities issuing the warrant were uncertain of the suspect's name, knew he had used several aliases, and initially issued a warrant including an alias. Id. Plaintiff in the instant case alleges that comparing Baron's fingerprints, photograph, and physical description provided when he was charged under plaintiff's name with Baron's information already on file under his own name would have revealed Baron's deception. Unlike Powe, however, plaintiff does not allege that at the time the warrant was issued by the court under plaintiff's name for Baron's probation violation, law enforcement officials believed or suspected that Baron was using an alias. Powe is therefore distinguishable. Although neither party addresses the issue, the court

_____

[6]Plaintiff does not explain to what "the actual warrant" refers, or what documents were available to defendants at the time of plaintiff's arrests and incarceration.

notes that plaintiff's invalidity argument is stronger regarding the arrests that occurred after state court judge's amended the warrant to state that plaintiff was not to be arrested.

Even if the warrant was facially valid, however, Sheahan's reliance on Baker to preclude plaintiff's federal claims is misplaced because Baker does not extend to all detentions pursuant to valid warrants. The Baker court itself acknowledged that the "mere detention pursuant to a valid warrant but in the face of repeated claims of innocence will *after the lapse of a certain amount of time* deprive the accused of liberty without due process of law." 443 U.S. at 145 (emphasis added). The Seventh Circuit noted in Powe, 664 F.2d at 651-52, that nothing in Baker precludes finding a constitutional violation where an arrestee is detained after the police discover that he is not the person sought. Courts following Baker have held that detaining an individual for a long period of time over his protests of mistaken identity, without any investigation, may raise serious constitutional questions. Patton v. Przybylski, 822 F.2d 697, 700 (7th Cir. 1987); Johnson v. City of Chicago, 711 F.Supp. 1465, 1470 (N.D. Ill. 1989); Panfil v. City of Chicago, 45 Fed.Appx. 528, 534 (7th Cir. 2002).

While the Baker court determined that a three-day detention over New Year's weekend was insufficient to constitute a deprivation of liberty under the due process clause, longer detentions under protest have been held sufficient. Patton, 822 F.2d at 701 (seven-day detention was sufficient); Johnson, 711 F.Supp. at 1470 (six-day detention was sufficient); Griffin, 1999 WL 342400, at *7 (five-day detention was sufficient). In Patton, the Seventh Circuit reversed the district court's dismissal of the plaintiff's complaint alleging that he was held for almost a week by the Cook County Sheriff, who had not arrested the plaintiff. The Patton court held that to allow an innocent person "to languish in jail for almost a week" over his vigorous protests that

he is the wrong man without either investigating the case or bringing him before a magistrate raises serious constitutional questions." 822 F.2d at 700-01. In the instant case, plaintiff was incarcerated in CCDOC for periods of eleven, twelve, and eight days, which raises similarly grave constitutional concerns.

Sheahan relies on <u>Weimann v. County of Kane</u>, 150 Ill. App. 3d 962 (2nd Dist. 1986), in support of his argument that he cannot be held liable for refusing to release an individual from custody without a court order. The <u>Weimann</u> court dismissed the plaintiff's § 1983 complaint alleging that he was held for over a month based on a warrant erroneously entered in his name, which the plaintiff alleged was clearly a forgery. Sheahan's citations are unhelpful for at least two reasons. First, the portions of <u>Weimann</u> relied on by Sheahan regarding a valid warrant relate to the plaintiff's state law false imprisonment claim, not his § 1983 claim. Second, <u>Weimann</u> was dismissed on grounds not relevant to the instant case. The <u>Weimann</u> court affirmed the dismissal of the § 1983 claim because the plaintiff had failed to allege a policy or custom, but noted that if the plaintiff "was in fact deprived of his liberty by persons who knew him to be innocent of the charges, he may well have a cognizable § 1983 claim." 150 Ill. App. at 966. In the instant case, plaintiff alleges that defendants knew or should have known that they were detaining the wrong man.

Sheahan cites <u>Johnson v. City of Chicago</u>, 711 F.Supp. 1465 (N.D.Ill. 1989), and <u>Smith v. Sheriff of Cook County</u>, 277 Ill. App. 3d 335 (1st Dist. 1995), for the holding that a sheriff was not liable for detaining the plaintiff pursuant to a judicial finding of probable cause. Sheahan points out that each time plaintiff was held at the Cook County Jail, he was released immediately after a state judge ordered him to be released. Unlike the plaintiffs in <u>Johnson</u> and <u>Smith</u>, who

were taken before a judge the day after their arrests or transfer to the sheriff's custody, however, plaintiff was repeatedly held for days and even weeks before seeing a judge. <u>Johnson</u>, 711 F.Supp at 338; <u>Smith</u>, 227 Ill. App. at 338. In addition, <u>Johnson</u> and <u>Smith</u> were decided prior to a line of Seventh Circuit cases holding that a jailer, including a sheriff, cannot abdicate his responsibility to ensure that he has the correct individual in custody, even though the jailer did not execute the arrest or the warrant. <u>See, e.g.</u>, <u>Luck v. Rovenstine</u>, 168 F.3d 323, 326 (7th Cir. 1999); <u>Armstrong</u>, 152 F.3d at 579. The <u>Luck</u> court noted, "In the final analysis, the Sheriff is the custodian of persons incarcerated in jail, and as such it is he who is answerable for the legality of their custody." As in <u>Luck</u> and <u>Armstrong</u>, Sheahan cannot "shrug off his federal constitutional responsibilities" toward detainees in his care, 168 F.3d at 326, in the face of plaintiff's allegations of repeated incarcerations and policies and practices of deliberate indifference.

Accordingly, plaintiff has stated a <u>Monell</u> claim against Sheahan.

### D. Adequate state remedy

Sheahan next argues that because plaintiff's § 1983 are inappropriate for federal review he has an adequate state remedy. The Supreme Court has held that in § 1983 actions challenging the mistakes made by state employees rather than the state procedures by which those mistakes were made, a court must consider the adequacy and availability of remedies under state law before concluding that a deprivation of life, liberty, or property violates due process of law. <u>Parratt v. Taylor</u>, 451 U.S. 527, 543-44 (1981); <u>see also</u> <u>Toney-El v. Franzen</u>, 777 F.2d 1224, 1228 (7th Cir. 1985) (articulating a number of alternate remedies for a prisoner custody dispute, including false imprisonment, writ of mandamus, or administrative measures); <u>Lundblade v.</u>

Franzen, 631 F.Supp. 214, 217 (N.D.Ill. 1986) (Illinois provides procedural safeguards for review of wrongful prisoner custody disputes).

Sheahan fails to recognize an essential distinction between the instant case and the line of Parratt cases he cites, which address prisoners who were detained beyond their release dates or challenged the calculation of their sentences.  As the Toney-El court explained, Parratt applies to "§ 1983 actions challenging mistakes made by state employees rather than the state procedures by which those mistakes were made." 777 F.2d at 1227.  In the instant case, plaintiff is challenging the policies and customs under which the mistake occurred, not an administrative mistake, and thus Parratt is not relevant.  See Young v. Sheahan, 1999 WL 1044935, *2 (N.D. Ill. Nov. 12, 1999) (denying motion to dismiss where plaintiff alleged that his wrongful detention was the result of the defendant's policy of failing to investigate claims of mistaken identity).

**E.  Eleventh Amendment**

Sheahan's final argument in favor of dismissal of plaintiff's § 1983 Monell claims is that they are barred by the Eleventh Amendment.  Under the Eleventh Amendment, federal courts do not have jurisdiction to decide "suits brought by private litigants against states or their agencies, and that prohibition extends to state officials acting in their official capacities."  Garcia v. City of Chicago, 24 F.3d 966, 969 (7th Cir. 1994).  A state's law determines whether a particular official is equivalent to the state. Id.  Generally, the Eleventh Amendment does not apply to county officials or other local government entities.  Richman v. Sheahan, 270 F.3d 430, 439 (7th Cir. 2001).  However, the Seventh Circuit has noted that county sheriffs and deputies can perform dual roles, as county officials when performing their local law enforcement function and as state

officials when they execute the orders of the state courts.  <u>Scott v. O'Grady</u>, 975 F.2d 366, 369 (7th Cir. 1992).

Sheahan fails to demonstrate why he should be treated as a state official under the circumstances of this case.  Further, he makes no effort to explain whether the policies and customs that plaintiff complains of are state or county policies.  The court thus rejects Sheahan's argument that plaintiff's § 1983 <u>Monell</u> claims are barred by the Eleventh Amendment.

## II.  State law claims

Count II  asserts a violation of the Illinois Constitution against the "Cook County Sheriff and unknown officers and agents," which does not include Folkers and Broadway.  Count III asserts a claim of false imprisonment against the "County Cook Sheriff Defendants," which according to footnote 1 to the third amended complaint does not include Folkers and Broadway. Counts V and VIII assert violations of the Illinois Constitution by all defendants (which would include Folkers and Broadway).  Counts VI and IX assert claims of false imprisonment against all defendants.  Counts XI and XIV assert violations of the Illinois Constitution by Hillard, Cline, and the City.[7]  Counts XII and XV assert false arrest and imprisonment claim against Hillard, Cline, and the City.

Hillard, Cline, and Sheahan argue that plaintiff's state claims are barred by the Tort Immunity Act (the "Act"), 745 ILCS 10/2-101 et seq.[8]  All three argue that they are immune

_____

[7]The court notes that Count XI also states that it is against the CPD, but the CPD is not a defendant.

[8]The County Defendants argue, in error, that plaintiff's federal § 1983 claims are also barred by the Act.  The Supreme Court has held that "[m]unicipal defenses—including an assertion of sovereign immunity—to a federal right of action are, of course, controlled by federal

(continued...)

from liability in their supervisory capacity pursuant to 745 ILCS 10/2-204.  In addition, Hillard

and Cline claim that their conduct qualifies as discretionary pursuant to 745 ILCS 10/2-201, and

Sheahan argues that he is immune from liability due to his status as a jailer pursuant to 745 ILCS

10/4-103.  For the reasons discussed below, § 2-204 of the Act bars plaintiff's state law claims

for damages.

Section 2-204 of the Act provides that, "Except as otherwise provided by statute, a public

employee, as such and acting within the scope of his employment, is not liable for an injury

caused by the act or omission of another person."  745 ILCS 10/2-204.  Supervisors are immune

from liability for the acts and omissions of others under the Act.  Payne, 161 F.3d at 1044

(sheriff immune from liability under the Act for allegations of conduct in violation of state law

by arresting officer); Clark v. City of Chicago, 595 F.Supp. 482, 487 (N.D. Ill.1984)

(supervisors, named only on respondeat superior grounds, were immune from liability under the

Act for false arrest and imprisonment, assault and battery, and malicious prosecution allegedly

committed by police officers ); Eiland v. Hardesty, 564 F.Supp. 930, 934 (N.D. Ill.1982) (police

superintendent was not liable for police officer's shooting of an individual).

Plaintiff argues in his response that he can avoid application of § 2-204 of the Act by

alleging willful and wanton conduct by defendants.  Plaintiff relies on § 1-210 of the Act, which

provides that "'Willful and wanton conduct' as used in this Act means a course of action which

shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter

---

[8](...continued)
law."  Howlett v. Rose, 496 U.S. 356, 376 (1990); see also Payne for Hicks v. Churchich, 161
F.3d 1030, 1038 (7th Cir. 1998).  Accordingly, the court addresses the Act's impact on the state
law claims only.

indifference to or conscious disregard for the safety of others or their property. This definition shall apply in any case where a 'willful and wanton' exception is incorporated into any immunity under this Act." 745 ILCS 10/1-210. Several sections of the Act include exceptions for willful and wanton conduct. See, e.g., 745 ILCS 10/2-202 ("A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct."). Section 2-204 does not contain such an exception. A court "may not read into the [Act] exceptions, conditions, or limitations that the legislature did not express." Village of Sleepy Hollow v. Pulte Home Corp., 336 Ill. App. 3d 506, 509-510(2nd Dist. Jan. 17, 2003). Plaintiff cites no case law or argument in support of his assertion that the willful and wanton exception applies to § 2-204. Accordingly, §2-204 bars the damage claims against Sheahan, Hillard, and Cline.

The Act, however, does not provide immunity from injunctive relief. 745 ILCS 10/2-201; PACE, Suburban Bus Div. of Regional Transp. Authority v. Regional Transp. Authority, 346 Ill. App. 3d 125, 143 (2nd Dist. July 17, 2003); Romano v. Village of Glenview, 277 Ill. App. 3d 406, 410 (1995). Section 2-201 provides, "Nothing in this Act affects the right to obtain relief other than damages against a local public entity or public employee." Plaintiff does not seek injunctive relief against Hillard and Cline, and, as discussed above, § 2-204 bars the damages claims against them.[9] Accordingly, the court grants Hillard and Cline's motion to dismiss the state law claims against them. Because the court finds that § 2-204 bars all of the state law claims Hillard and Cline, it need not address their arguments under § 2-201 of the Act.

---

[9]Plaintiff seeks injunctive relief against the City, which did not move to dismiss any of plaintiff's claims.

19

Plaintiff does seek to enjoin Sheahan and his agents from incarcerating plaintiff on the warrant at issue here, however, and Sheahan fails to respond to plaintiff's argument that equitable relief is not precluded by the Act. Accordingly, the court denies Sheahan's motion to dismiss the equitable state law claims. Because the court grants Sheahan's motion to dismiss the damage claims under § 2-204, and the Act does not apply to the remaining equitable claim, the court need not address Sheahan's argument that he is statutorily immune under § 4-103 of the Act.

### III.  Folkers and Broadway - Counts I through III

Plaintiff alleges that after his second arrest, on which Counts I through III are based[10], he "pleaded his claim of misidentification" to Sheriff's officers Folkers and Broadway, who were on duty at the Cook County Jail, but was held for eleven more days before being brought before a judge. Although the motion to dismiss was filed only by Sheahan, the reply brief was purportedly filed by Sheahan, Folkers, Broadway, and the County. These defendants argue for the first time in the reply brief that the § 1983 claims against Folkers and Broadway should be dismissed because the third amended complaint "contains absolutely no allegations of wrongdoing with respect to defendants Folkers or Broadway." Without any further explanation, argument, or citation in support, these defendants conclude that plaintiff fails to state a colorable § 1983 claim against Broadway and Folkers. Counts II and III are also based on the second

---

[10] These are the only counts in the third amended complaint that state claims against Folkers and Broadway. As noted above, although plaintiff muddies his complaint by failing to name defendants individually or precisely, Counts I through III clearly pertain to the second arrest, and plaintiff alleges that he presented his claims of mistaken identity to Folkers and Broadway during his incarceration following that arrest. The court therefore considers Counts I through III to be against Folkers and Broadway.

arrest, but the reply brief fails to address these counts on behalf of Folkers and Broadway.  The

court will not consider this argument for several reasons.  First, an argument cannot be raised for

the first time in a reply brief, <u>Multi-Ad Svcs., Inc. v. N.L.R.B.</u>, 255 F.3d 363, 370 (7th Cir. 2001);

<u>Ty, Inc. v. The Jones Group, Inc.</u>, 2001 WL 1414232, at *2 (N.D.Ill. Nov. 9, 2001), especially

when the motion to dismiss was not filed by these parties.  Second and more significantly, these

defendants utterly fail to develop or explain this argument, and the court will not consider such a

cursory argument.  Third, contrary to the Folker and Broadway's arguments, plaintiff alleges that

Folkers and Broadway were among the officers who ignored and failed to investigate his

repeated claims of mistaken identity.

Accordingly, the court denies the motion to dismiss the claims against Folkers and

Broadway.

## <u>CONCLUSION</u>

For the reasons stated above, the court grants Hillard and Cline's motion to dismiss

plaintiff's § 1983 claims against them in their official capacities, but denies their motion to

dismiss the individual capacity § 1983 claims.  The court grants Hillard and Cline's motion to

dismiss the state law claims against them.  The court denies Sheahan's motion to dismiss the

§ 1983 clams against Sheahan, Folkers, and Broadway.  The court grants Sheahan's motion to

dismiss the state law damage claims, but denies the motion to dismiss the equitable claims

seeking an injunction against Sheahan.

As noted above, the third amended complaint remains confusing and imprecise as to

which defendants are named in which counts.  For example, Counts IV through IX are

purportedly filed against "all defendants," which is clearly incorrect because Folkers and

Broadway had nothing to do with the arrests involved in those counts. Consequently, the court strikes the third amended complaint and dictates plaintiff to file a fourth amended complaint on or before June 5, 2006, naming the proper defendants to each count and defining terms of art such as "County Defendants" correctly and precisely. In addition, the fourth amended complaint shall conform its claims to the substantive rulings in this opinion. Failure to comply with these directions will result in the award of sanctions against plaintiff's counsel.

Defendants shall respond to the fourth amended complaint on or before June 30, 2006. This matter is set for a report on status July 6, 2006, at 9:00 a.m.

**ENTER:**      **May 15, 2006**

**Robert W. Gettleman**
**United States District Judge**